UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED TEAMSTER FUND *et al.* and
LOCAL 522 WELFARE FUND OF NEW YORK
AND NEW JERSEY *et al.*,

                   Plaintiffs,

           -against-

MAGNACARE ADMINISTRATIVE SERVICES,
LLC and MAGNACARE, LLC,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    USDC SDNY
    DOCUMENT
    ELECTRONICALLY FILED
    DOC #:_____
    DATE FILED: 8/14/2014

13 Civ. 6062 (WHP)

<u>MEMORANDUM & ORDER</u>

WILLIAM H. PAULEY III, District Judge:

      This case involves a dispute between ERISA funds and their third-party plan

administrator over compensation and the quality of services rendered.  MagnaCare

Administrative Services, LLC and MagnaCare, LLC (collectively "MagnaCare") move to

dismiss the Complaint.  The Trustees of the United Teamster Fund (UTF) and Local 522 Welfare

Fund of New York and New Jersey (collectively "The Funds") move to dismiss MagnaCare's

Counterclaim.  Alternatively, the Trustees move for summary judgment dismissing the

Counterclaim.  For the reasons that follow, MagnaCare's motion to dismiss is granted in part and

denied in part, the Trustees' motion for summary judgment is granted, and the Trustees' motion

to dismiss is denied as moot.

BACKGROUND

      The Funds are self-insured health benefit plans.[1]  In 2001, UTF's trustees hired

MagnaCare to serve as UTF's third-party plan administrator.  Local 522's trustees engaged

---

[1] Except as otherwise indicated, these facts are taken from the Complaint and exhibits attached to
the Complaint.

MagnaCare on the same terms in 2005. The Trustees terminated the contracts in early 2014. (Charles Pergue Aff. Ex. B, at 1, ECF No. 25; Pergue Aff. Ex. D, at 1.). For its services, MagnaCare received administrative fees—based on the number of eligible employees—and management fees in an undisclosed amount for processing laboratory diagnostic services claims.

A diagnostic fee schedule developed by MagnaCare set the aggregate rate the Funds paid for each laboratory diagnostic service. According to the parties' Service Agreements ("Agreement"), each diagnostic fee included both MagnaCare's management fee[2] and the provider's fee. But, without the Trustees' knowledge, MagnaCare negotiated better rates with providers and kept the difference. As a result, it retained over 65% of the diagnostic fee schedule payments without the Trustees' knowledge. The Funds paid over $8.5 million in management fees between 2005 and 2013. These management fees were of a similar magnitude to the administrative fees paid by the Funds. Unbeknownst to the Trustees, MagnaCare also began adding a $1-$2 management fee to each durable medical equipment[3] claim in late 2001, a charge absent from the Agreement. The Agreement provided that management fees and provider fees were to be paid from the Funds' Health Benefit Claim Accounts, (Compl. Ex. 1 § 4.2(B),)

---

[2] The Agreement's entire reference to management fees is:

> In addition to the administrative fees set forth above, Client acknowledges that MagnaCare has developed a diagnostic fee schedule which includes a management fee. The diagnostic fee schedule accepted by participating diagnostic and ancillary providers represents a combined management/provider fee schedule. Fees paid pursuant to the diagnostic fee schedule include a management portion payable to MagnaCare and, a diagnostic Preferred Provider fee payable to the diagnostic Preferred Provider. Other than the management fee payable to MagnaCare in connection with diagnostic and ancillary claims, all funds paid from the Health Benefit Claim Account will be paid directly to providers at the applicable fee schedule or out-of-network benefit amount.

(Compl. Ex. 1 §4.2(B).)
[3] In the context of Medicare and Medicaid, "durable medical equipment" is equipment used in a patient's home such as wheelchairs, blood-testing strips, and blood glucose monitors. 42 U.S.C. § 1395x(n).

and in practice all but UTF's laboratory diagnostic provider fees were paid directly from the Health Benefit Claim Accounts, (Compl. ¶ 33). Although MagnaCare submitted monthly claims reports to the Funds, these reports never itemized or mentioned any management fee.

Under the Agreement, MagnaCare had a duty to adjudicate claims "with the care, skill, prudence and diligence that a competent professional administrator, consistent with industry standards, would exercise with regard to an employee benefit fund subject to ERISA." (Compl. ¶ 69 & Ex. 1 § 6(a)(i).) The Trustees point to five failures in MagnaCare's adjudication of claims, including (1) authorizing payment of laboratory test claims submitted piecemeal that improperly maximize a provider's fees, (2) permitting rampant overuse of claims for extended office visits, (3) authorizing payment of laboratory services not supported by the physician's diagnosis, (4) failing to use a quality control technique known as "code pairing edits" to prevent improper payment of duplicative medical procedure claims, and (5) authorizing reimbursement of double billed claims. These errors caused the Funds to overpay claimants by more than $2.6 million.

In particular, the federal government developed "code pairing edits" as a quality control technique to improve the adjudication of Medicare claims. Certain, "global" medical procedures encompass other, minor medical procedures incident to the global procedure. When a provider seeks reimbursement for the global procedure and the subsumed, minor procedure at the same time, the code pairing edits prevent the provider from receiving double reimbursement. Fifty-nine of the code pairing edits have been adopted widely by third-party plan administrators. MagnaCare applied none of these code pairing edits to its adjudication of claims for the Funds, causing the Funds to overpay providers by more than $600,000.

Costs covered by the Workers Compensation Program are not covered by the Funds. When the Funds pay a provider for a claim that should have been covered by the Workers Compensation Plan, the Funds are entitled to a refund from the provider. But MagnaCare kept 25% of approximately 100 workers compensation claims refunded to UTF without consulting UTF's trustees.

MagnaCare purports to offer discounted provider rates in the Agreement. But it reimburses its network hospitals approximately 36% more for inpatient costs than the average commercial payer. This reimbursement rate caused the Funds to pay $1.3 million more than the average commercial payor.

In sum, the Funds allege that MagnaCare's secret optimization of its fees violated MagnaCare's fiduciary and contractual duties.

MagnaCare responds with a counterclaim alleging that the Trustees breached their fiduciary duties under ERISA by waiting thirteen years to assert their claims. MagnaCare contends the Trustees' derelictions cost the Funds millions of dollars and that it would be inequitable to hold MagnaCare accountable for any of the Trustees' breaches.

## DISCUSSION

I.   Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To determine plausibility, courts follow a "two-pronged approach." Iqbal, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (internal quotation marks and citation omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

II.     MagnaCare's Motion to Dismiss the Funds' Complaint

        The Funds bring an ERISA claim for breach of fiduciary duty and New York state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, conversion, unjust enrichment, and violation of the New York Deceptive Acts and Practices. MagnaCare moves to dismiss the Complaint in its entirety.

    A.  ERISA Claim

        ERISA protects employee pension and retirement plans by creating "strict standards of [fiduciary] conduct, also derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 570 (1985). "[T]he duty of loyalty is expressed as follows: '(1) [a] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries . . . .'" Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 26 (2d Cir. 2002) (quoting 29 U.S.C. § 1104(a)(1)(A)(i)). The statute supplements the duty of loyalty with an express prohibition on self-dealing. 29 U.S.C. § 1106(b) ("A fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account . . . .").

(1) Whether MagnaCare Acted as an ERISA Fiduciary

MagnaCare contends it was not an ERISA fiduciary. A third-party plan administrator is a fiduciary of an ERISA plan if it "exercises any authority or control respecting management or disposition of [the plan's] assets."[4] 29 U.S.C. § 1002(21)(A); see Harris Trust, 302 F.3d 18, 26 (2d Cir. 2002). In the context of contractors' fees, courts consider: (1) whether the money from which the fees were taken constitute plan assets and (2) whether the contractor has any authority or control over those assets. United States v. Glick, 142 F.3d 520, 527 (2d Cir. 1998). "[A] person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." Harris Trust, 302 F.3d 18, 28 (citations omitted). But "[t]he fiduciary provisions of ERISA derive from the common law of trusts and should, as a general matter, be broadly construed." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (citing, inter alia, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989)).

i.   Whether the Fees Were Taken From Plan Assets

"'The assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law.' Assets will 'include any property, tangible or intangible, in which the plan has a beneficial ownership interest.'" In re Halpin, 566 F.3d 286, 289 (2d Cir. 2009) (quoting U.S. Dep't of Labor, Advisory Op. No. 93–14A (May 5, 1993)).

---

[4] Under Section 1002(21)(A),
> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A). The parties do not address whether MagnaCare acted as a fiduciary when it provided claim adjudication services, refunded workers compensation claims, or set high in-patient hospital rates.

Parties are free to provide contractually that certain assets are not plan assets. Sheet Metal Workers' Nat'l Pension Fund v. AUL Sheet Metal Works Inc., 10 Civ. 1371 (KBF), 2012 WL 32237, at *4 (S.D.N.Y. Jan. 5, 2012) (citing In re Halpin, 566 F.3d at 290-91).

The Complaint asserts MagnaCare took the management fees "directly out of The Benefit Plans' assets." (Compl. ¶ 46.)  But this Court need not accept legal conclusions as true. Harris, 572 F.3d at 72.  The Agreement implies the management fees will be taken from the Health Benefit Claim Accounts:[5]

> Other than the management fee payable to MagnaCare in connection with diagnostic and ancillary claims, all funds paid from the Health Benefit Claim Account will be paid directly to Providers at the applicable fee schedule or out-of-network benefit amount.

(Compl. Ex. 1 § 4.2(B).)  The Complaint also alleges that management fees would be taken from the Health Benefit Claim Accounts.  (See Compl. ¶¶ 32-33.)  The Funds have a beneficial ownership interest in their own accounts.  Although another court found similarly structured fees were not plan assets, the contract in that case expressly excluded the fees from plan assets.[6] United Benefit Fund v. MagnaCare Admin. Servs. LLC, No. 11 Civ. 4115 (JS) (GRB), 2012 WL 3756298, at *2-3 (E.D.N.Y. Aug. 27, 2012).  MagnaCare offers no such contractual provision here.

MagnaCare contends a broad definition of plan assets would subject utilities and other creditors to ERISA fiduciary status.  But fiduciary liability attaches only if a party exercises discretion, management, or control over plan assets.  Creditors typically lack such control and are therefore insulated from ERISA fiduciary liability.  And a contractor with control over plan assets may negotiate to exclude their compensation from plan assets. Sheet Metal

---

[5] These accounts allegedly were created by the Funds and contained assets of the Funds.  (See Compl. ¶ 32; Ex. A at 5.)  The Funds authorized MagnaCare to issue payments to providers from these accounts.  (See Compl. ¶ 32, Ex. A at § 4.2(A).)

[6] Because United Benefit fails to cite In re Halpin, its reasoning is unpersuasive.

Workers', 2012 WL 32237, at *4.  MagnaCare negotiated no such exclusion here.  Because the Complaint alleges the management fees were taken from an account in which the Funds have a beneficial ownership interest, it sufficiently pleads that the management fees were taken from plan assets.

### ii.   Whether MagnaCare Exercises Authority over Plan Assets

A party becomes a fiduciary if it exercises any authority or control over plan assets.  If a contractor to an ERISA plan retains control over factors that determine its compensation, the contractor becomes a fiduciary as to that compensation.  F.H. Krear & Co. v. Trustees of Local 69 Pension Fund, 810 F.2d 1250, 1259 (2d Cir. 1987); see also Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 199 (D. Mass. 2008) (control in setting fee within range sufficient).

But contractors that receive contractually-established commission rates are not fiduciaries as to their compensation.  Glick, 142 F.3d at 528; Harris Trust, 302 F.3d at 28 (a person is a fiduciary only to extent he exercises described authority or control).  Even unreasonable compensation does not make a contractor a fiduciary if the rate is set by contract. Schulist v. Blue Cross of Iowa, 717 F.2d 1127, 1131-32 (7th Cir. 1983).  And retaining payments in excess of costs does not create a fiduciary duty where the contract expressly authorizes the withholding, Seaway Food Town, Inc. v. Med. Mut. of Ohio, 347 F.3d 610, 619 (6th Cir. 2003), or where the contract simply does not require a contractor "to pass along all of the savings," Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 474 (7th Cir. 2007).

According to the Agreement, the Funds were charged (1) a fee by participating providers for their laboratory diagnostic services and (2) a management fee by MagnaCare. (Compl. Ex. 1 § 4.2(B).)  The Trustees, however, were told only the aggregate rate through

monthly bills. Taking all inferences in favor of the Funds, the Complaint suggests the management fees and provider fees were distinct fees for distinct services. By pocketing the savings from renegotiated rates with providers, MagnaCare unilaterally increased its own fees. Therefore, the Complaint pleads that MagnaCare exercised discretion in setting the management fees.

Apart from the management fees for laboratory diagnostic services, MagnaCare also charged management fees for durable medical equipment claims. MagnaCare contends it did not control the amount of the durable medical equipment fees as the fees were disclosed in the contract as "ancillary fees." The Complaint, however, alleges MagnaCare never disclosed the durable medical equipment fees, and the contract does not define the term "ancillary fees." (See Compl. ¶¶ 63-64; Compl. Ex. 1 § 4.2(B).) This allegation is sufficient to defeat a motion to dismiss. See Harris, 572 F.3d at 72. The Complaint adequately pleads MagnaCare acted as an ERISA fiduciary when it charged the Funds durable medical equipment fees without disclosing them.

### (2) Whether the Funds State an ERISA Claim for Damages

MagnaCare contends the Complaint fails to plead damages because it seeks "an indeterminate amount that is not based on any identified objective criterion." (Mem. Supp. Defs.' Mot. to Dismiss 8.) But there is no requirement that damages be pled based on a "identified objective criterion." See 29 U.S.C. §§ 1106, 1108, 1109. When a fiduciary engages in a prohibited transaction, the fiduciary is liable for losses to the plan, profits made by it through the use of assets of the plan, and other equitable or remedial relief. See 29 U.S.C. § 1109(a). The Complaint alleges that MagnaCare's breaches—increasing its management fees for laboratory diagnostic services and durable medical equipment claims and increasing its

administrative fee by improperly adjudicating claims—caused the Funds to overpay MagnaCare and providers. This is sufficient to plead damages.[7]

    B. State Law Claims

        (1) ERISA Preemption

        MagnaCare argues the Trustees' state law claims are preempted by ERISA § 502. The ERISA preemption regime presents a tangle of three preemption doctrines expressed in statutory provisions that "perhaps are not a model of legislative drafting." Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985); see Aetna Health Inc. v. Davila, 542 U.S. 200, 214 n.4 (2004) (highlighting relationship between express, conflict, and complete preemption). "To preempt [state law], a 'clear and manifest purpose' by Congress is required." Liberty Mut. Ins. v. Donegan, 746 F.3d 497, 506 (2d Cir. 2014) (quoting N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)). And courts address claims of preemption "with the starting presumption that Congress does not intend to supplant state law." Travelers, 514 U.S. at 654 (citations omitted).

        Section 514 expressly preempts state law claims that "relate to" any ERISA plan. 29 U.S.C. § 1144(a); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). Because "[r]eally, universally, relations stop nowhere," Travelers 514 U.S. at 655 (quoting H. James, Roderick Hudson xli (New York ed.,

---

[7] MagnaCare also claims the Complaint fails to allege what portion of the management fees was unreasonable. Although a fiduciary may charge reasonable fees for its services, 29 U.S.C. §§ 1108, it is the fiduciary's burden to show the fees were reasonable. Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1215 (2d Cir. 1987); see also Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 (8th Cir. 2009) (citation omitted). There is no requirement that the Funds plead unreasonableness. See Lowen, 829 F.2d at 1215; In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 711 (S.D.N.Y. 2011).

World's Classics 1980)), courts "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." Travelers, 514 U.S. at 656.

ERISA express "[p]reemption 'was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.'" Liberty Mut., 746 F.3d at 504-05 (citation omitted). Therefore, a state law is preempted under section 514 if it "tend[s] to control or supersede central ERISA functions," Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 59 (2d Cir. 2010); Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 324 (2d Cir. 2003); precludes the "nationally uniform administration of employee benefit plans," Travelers, 514 U.S. at 657, 660; or seeks an alternative theory of recovery, Liberty Mut., 746 F.3d at 512; Stevenson, 609 F.3d at 62; Hattem v. Schwarzenegger, 449 F.3d 423, 431 (2d Cir. 2006).

"However, where there is no comparable statutory objective[,] . . . alternate state remedies might be available." Gerosa, 329 F.3d at 325-26. Accordingly, a state law is not expressly preempted if "the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." Hattem, 449 F.3d at 429 (quoting Travelers, 514 U.S. at 661); see also Liberty Mut., 746 F.3d at 509. And courts are hesitant to preempt state laws that do not "affect the relationships among 'the core ERISA entities.'" Stevenson, 609 F.3d at 59 (quoting Gerosa, 329 F.3d at 324).

Section 502(a) sets out ERISA's comprehensive civil enforcement scheme. The detailed provisions and ERISA's purpose provide strong evidence Congress intended the scheme to be exclusive. Davila, 542 U.S. at 209 (quoting Pilot Life, 481 U.S. at 54). Thus, "[u]nder ordinary principles of conflict pre-emption," Davila, 542 U.S. at 217-18, "any state-law cause of

action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[8] Davila, 542 U.S. at 209 (citing Pilot Life, 481 U.S. at 54-56).

Finally, ERISA bars only state law claims against fiduciaries; state law claims against non-fiduciaries escape preemption. Burger v. Empire Blue Cross & Blue Shield, No. 99 Civ. 4366 (LMM), 2000 WL 1425101, at *2, 2000 U.S. Dist. LEXIS 14010, at *5-6 (S.D.N.Y. Sept. 27, 2000); cf. Geller v. Cnty. Line Auto Sales, Inc., 86 F.3d 18, 21-23 (2d Cir. 1996) (where ERISA merely context in which fraud took place, claim not preempted). "ERISA does not create a 'fully insulated legal world' for plans; they must deal with outsiders, such as landlords or debt-collectors, under the same diverse hodge-podge of state law as any other economic actor." Gerosa v. Savasta & Co., 329 F.3d 317, 328 (2d Cir. 2003) (citations omitted).

MagnaCare contends all of the Trustees' state law claims conflict with section 502(a) and are therefore preempted. The Complaint alleges MagnaCare acted as a fiduciary by altering its management fees over time, charging durable medical equipment fees without disclosing them, and failing to properly adjudicate claims.[9] The Trustees' state law claims stemming from those acts seek to supplement ERISA's regulation of fiduciary responsibility. Further, although based on laws of generally applicability, the claims related to MagnaCare's fiduciary acts would provide an alternative theory of recovery to the Funds. These claims are preempted if in fact MagnaCare is an ERISA fiduciary. Cf. LoPresti v. Terwilliger, 126 F.3d 34,

---

[8] On a motion to dismiss, section 502(a) preempts state law claims under the doctrine of conflict preemption. But on a motion to remand, section 502(a) has "such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Davila, 542 U.S. at 209 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)) (internal quotation marks omitted). This doctrine, known as "complete preemption," is not relevant here.

[9] MagnaCare does not challenge the Funds' claim that it acted as a fiduciary in processing claims.

41 (2d Cir. 1997) (finding conversion claim survived to extent it claimed conversion of non-plan assets).

However, where "the evidence has not yet shown whether defendants are fiduciaries," plaintiffs may plead state law claims in the alternative. <u>Pedre Co., Inc. v. Robins</u>, 901 F. Supp. 660, 666 (S.D.N.Y. 1995); <u>see also</u> <u>Burger</u>, 2000 WL 1425101, at *2. Therefore, the Trustees' state law claims[10] concerning the management and durable medical equipment fees and claim adjudication practices may proceed until MagnaCare's status as a fiduciary is established. The state law claims derived from MagnaCare's other acts—refunding worker's compensation claims and setting high inpatient hospital rates—do not concern ERISA functions nor seek to supplement ERISA's causes of action. Those claims are not preempted.

### (2) Whether the Funds Adequately Plead State Law Claims

#### i. Fraud

MagnaCare argues that the Trustees' fraud allegations concerning MagnaCare's duty to negotiate the best market price are insufficiently particular and fail to state a claim. The Trustees base their fraud claim on three acts by MagnaCare: (1) failure to review claims in accordance with industry standards, (2) concealment of the management fees' magnitude and mischaracterization of the management fees as related to management services when no such services were performed in the monthly billing statements, and (3) the same concealment and mischaracterization in the Agreement. (Compl. ¶¶ 149-150, 154.)

Under New York law, fraud consists of "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and

---

[10] The following state law claims touch on MagnaCare's allegedly fiduciary acts: breach of contract, negligent misrepresentation, fraud, conversion, unjust enrichment, New York Deceptive Acts and Practices, and breach of the implied covenant.

damages." <u>Eurycleia Partners, LP v. Seward & Kissel, LLP</u>, 12 N.Y.3d 553, 559 (2009).

Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to "state with particularity

the circumstances constituting fraud." "[W]here the alleged fraud is premised on an omission, a

plaintiff must specify the person responsible for the failure to speak, the context of the omission,

and the manner in which the omission misled the plaintiff." <u>Solutia Inc. v. FMC Corp.</u>, 456 F.

Supp. 2d 429, 449-50 (S.D.N.Y. 2006).

      The first asserted act, that MagnaCare reviewed claims improperly, does not

concern a misrepresentation or omission.  Therefore, this act cannot form the basis for a fraud

claim.

      The second act stems from monthly billing statements that failed to identify or

itemize the management fee.  (Compl. ¶¶ 34, 154.)  These misleading statements were allegedly

intended to lead and in fact led the Trustees to assume the service billed was "merely claim

reimbursement for laboratory services."  (Compl. ¶ 154.)  The Complaint sufficiently explains

the context of the omission and the manner in which MagnaCare's omission misled the Trustees,

and therefore this claim is adequately pled.  <u>See Solutia Inc.</u>, 456 F. Supp. 2d at 449-50.

      The third act concerns statements in the Agreement.  (Compl. ¶¶ 38, 150.)  The

Trustees claim MagnaCare crafted the Agreement to mislead the Trustees as to the amount of the

management fees and what services the fees purchased.

> [U]nder New York law, where a fraud claim arises out of the same facts as
> plaintiff's breach of contract claim, with the addition only of an allegation that
> defendant never intended to perform the precise promises spelled out in the
> contract between the parties, the fraud claim is redundant and plaintiff's sole
> remedy is for breach of contract.

<u>Gutkowski v. Steinbrenner</u>, 680 F. Supp. 2d 602, 614 (S.D.N.Y. 2010) (alteration in original)

(quoting <u>Telecom Int'l Am. Ltd. v. AT & T Corp.</u>, 280 F.3d 175, 196 (2d Cir. 2001)); <u>see also</u>

<u>Brick v. Cohn-Hall-Marx Co.</u>, 276 N.Y. 259, 264 (1937).  As to this third act, the Trustees fail to

assert facts beyond their breach of contract claim. (Compare Compl. ¶¶ 143, with Compl. ¶¶ 150; Mar. 27 Tr. 22:9-24 (counsel for the Funds) ("The underlying facts [of the breach of contract and fraud claims] . . . are the same. The state of mind of the defendant is different.").)

  ii. Deceptive Acts

  "The New York General Business Law makes it unlawful to engage in '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state.'" Crawford v. Franklin Credit Mgmt. Corp., --- F.3d ----, 2014 WL 3377175, at *14 (2d Cir. July 11, 2014) (alteration in original) (quoting N.Y. Gen. Bus. Law § 349(a)).  Section 349 only applies to acts or practices that "have a broader impact on consumers at large.  Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995) (citation omitted).  The following factors indicate a practice is not consumer-oriented: (1) large amounts of money are at stake, (2) the transaction is unique to the parties or "single shot" transaction, and (3) the parties are sophisticated and have similar bargaining power.  Interested Underwriters at Lloyd's of London Subscribing to Policy No. 991361018 v. Church Loans & Invs. Trust, 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006); Oswego Laborers', 85 N.Y.2d at 26-27.  "Contracts to provide commodities that are available only to businesses do not fall within the parameters of § 349." Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004) (citing Cruz v. NYNEX Info. Res., 263 703 N.Y.S.2d 103, 107 (1st Dep't 2000)).

  The deceptive acts here involve a private contract dispute unique to MagnaCare and the Funds.  The Funds paid MagnaCare hundreds of thousands of dollars every year under the Agreement, a large amount suggesting the contract is business rather than consumer-oriented.

(Compl. ¶ 29.)  The contract concerns a service available only to businesses: third-party plan administrator services for self-insured health benefit plans.  The parties, trustees of benefit plans and a large corporation, are sophisticated.  Therefore, the Trustees fail to allege a consumer-oriented deceptive practice, and that claim is dismissed.

### iii.  Breach of Contract

The Funds contend MagnaCare breached the Agreement by failing to adjudicate claims appropriately and keeping a management fee for diagnostic and durable medical equipment claims.  MagnaCare argues they had no obligation under the Agreement to use code pairing edits during claim adjudication.  The Agreement obliges MagnaCare to "perform all services . . . in accordance with sound administrative practices and with the care, skill, prudence and diligence that a competent professional administrator, consistent with industry standards, would exercise." (Compl. ¶ 69, Ex. 1 § 6(a)(i).)  Adopting the code pairing edits serves as a quality control feature on claim processing, preventing payment of improper claims when certain types of claims are submitted together.  (Compl. ¶ 103.)  Fifty-nine of the code pairing edits have been adopted widely by third-party plan administrators.  (Compl. ¶ 104.)  The Complaint sufficiently alleges that MagnaCare, as a prudent professional third-party plan administrator, should have used the widespread code pairing edits to improve the quality of their claim adjudication practices.

The Funds claim MagnaCare also breached the Agreement by, inter alia, taking large management fees without providing commensurate services.  The Agreement permitted MagnaCare to set laboratory diagnostic services management fees but does not indicate what services those management fees procured or how the fees are calculated.  The Complaint also

alleges MagnaCare took durable medical equipment fees that were not disclosed in the Agreement. Therefore, the Complaint states a claim for breach of contract.

### iv.   Injunctive Relief

Finally, the Trustees claim for injunctive relief is dismissed because injunctive relief is a remedy, not a separate cause of action. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010). Whether the Trustees or the Funds are entitled to this remedy is a question that is not ripe for resolution on the pleadings.

### C.   Affirmative Defenses

Affirmative defenses "often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013). But "[a]n affirmative defense may be raised by a . . . motion to dismiss . . . if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998); see also Konowaloff v. Metro. Museum of Art, 702 F.3d 140, 146 (2d Cir. 2012).

### (1)   Statute of Limitations for ERISA Claim

MagnaCare contends the ERISA claim is time barred. ERISA claims must be filed by the earlier of six years from the last breach or three years after the earliest date on which a plaintiff has actual knowledge of a breach. 29 U.S.C. § 1113. "Actual knowledge" consists of "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001).

Alternatively, "[i]n the case of fraud or concealment," a plaintiff has six years to commence an action from the date of discovery. 29 U.S.C. § 1113. This statute of limitations

applies where a fiduciary (1) made a negligent misrepresentation or omission to induce a beneficiary to act to its detriment or (2) "engaged in acts to hinder the discovery of a breach of fiduciary duty." Caputo, 267 F.3d at 190 (citations omitted).

The Trustees claim MagnaCare's monthly billing statements constituted a fraud and negligent misrepresentation used to induce the Funds to pay laboratory diagnostic service management and durable medical equipment fees. And the Complaint alleges MagnaCare hindered the discovery by failing to itemize or mention a management fee component or amount on the monthly statements. (See Compl. ¶¶ 34, 63-65.) Therefore, the allegations in the Complaint give rise to a six-year, fraud-induced statute of limitations with respect to MagnaCare's retention of laboratory diagnostic services management and durable medical equipment fees. The Complaint sufficiently pleads that the claim accrued when the Trustees discovered the breaches of fiduciary duty in 2011.

MagnaCare counters that the ERISA claim for fees accrued when the parties executed the Agreement because the Agreement disclosed MagnaCare's laboratory diagnostic services management and durable medical equipment fees. As to the durable medical equipment fees, the Complaint alleges the Agreement and its associated documents did not disclose them. Therefore, the Trustees lacked actual knowledge of facts material to their claim until they learned of the durable medical equipment fees. Regarding the laboratory diagnostic services management fees, the Trustees needed to be aware that MagnaCare unilaterally altered the management fees to appreciate that MagnaCare was in fact a fiduciary. See infra Part II(A)(1); Zang v. Paychex, Inc., 728 F. Supp. 2d 261, 266 (W.D.N.Y. 2010) ("[T]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty cannot communicate the existence of an underlying breach.") (quoting Caputo, 267 F.3d at 193). Therefore, taking all

inferences in favor of the Trustees and the Funds, the ERISA claim for laboratory diagnostic services management and durable medical equipment fees accrued in 2011 and the claim is timely.[11]

MagnaCare also contends the Trustees knew of MagnaCare's claim adjudication practices as early as 2001, and therefore the Trustees' ERISA claim as to those practices is barred under ERISA's knowledge-based statute of limitations, § 413(2). The Complaint alleges the Trustees received monthly bills and yearly claims data from MagnaCare. The Trustees could have conducted the data analysis leading to this Complaint at any time.

But § 413(2) applies where a plaintiff has "actual knowledge of the breach or violation." 29 U.S.C. § 1113(2) (emphasis added). MagnaCare only points to allegations suggesting the Trustees possessed constructive knowledge, which is insufficient under the statute. See Caputo, 267 F.3d at 194. Therefore, the ERISA claim is not time-barred.

### (2) Statute of Limitations for State Law Claims

MagnaCare contends the state law claims are barred by New York's statute of limitations. First, New York's statute of limitations for contract claims is six years. N.Y. C.P.L.R. 213(2). "[W]here a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously . . . ." Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp., 430 N.Y.S.2d 179, 186 (4th Dep't 1980); see also N.Y. Cent. Mut. Fire Ins. Co. v. Glider Oil Co., Inc., 936 N.Y.S.2d 815, 820 (2011). In that case, "plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit," regardless of when the breaches occurred. Airco Alloys, 430

---

[11] MagnaCare further argues the three-year, knowledge-based statute of limitations is applicable to the ERISA claim for fees. But the knowledge-based statute of limitations does not apply where breaches are hidden by fraud. 29 U.S.C. § 1113.

N.Y.S.2d at 186.  Without a recurring obligation, each independent breach initiates its own cause of action.  See N.Y. Cent., 936 N.Y.S.2d at 820.  The cause of action accrues even if the injured party is ignorant of the breach, except in cases of fraud.  Ely-Cruikshank Co., Inc. v. Bank of Montreal, 81 N.Y.2d 399, 403 (1993).

Although the Agreement obliged MagnaCare to exercise care in providing third-party plan administrator services, the Complaint does not allege MagnaCare labored under a continuing duty to revisit adjudicated claims.  Cf. N.Y. Cent., 936 N.Y.S.2d at 820 (finding recurring obligation to supply all LP gas and maintain supply system).  And the multitude of breaches does not transform MagnaCare's duty into a recurring obligation to remedy old breaches.  Therefore, the continuing performance doctrine does not apply.  To the extent the breach of contract claim arises from breaches of claim adjudication obligations occurring more than six years before the Complaint was filed, the claim is time-barred.  But each time MagnaCare failed to perform claim adjudication properly, kept an undisclosed durable medical equipment fee, or retained a renegotiated management fee, a new breach occurred.  Further, because the Trustees' fraud claim survives, the Trustees' alleged breach of contract and implied covenant claims concerning the management fees (Claims Two and Six) accrued in 2011 and, therefore, fall within the statute of limitations.

Second, the Trustees claim MagnaCare's billing practices constitute fraud (Claim Three).  New York's statute of limitations for fraud is the longer of six years or two years from when plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. 213(8).  A duty of inquiry arises when the facts would suggest fraud to a person of ordinary intelligence.  See Cruden v. Bank of New York, 957 F.2d 961, 973 (2d Cir. 1992).

MagnaCare argues the Trustees could, with reasonable diligence, have discovered MagnaCare's alleged fraud when they received the first bill. But the Complaint alleges that each bill made no mention of the management fees and that the Trustees had to conduct an analysis to identify the fraud. (See, e.g., Compl. ¶¶ 51, 86, 93, 154.) The Complaint also avers the Trustees discovered Magnacare's fraud in 2011, (Compl ¶ 124,) and the Complaint was filed in 2013. This is sufficient.

Third, the Trustees bring claims for negligent misrepresentation (Claims Four and Five). New York courts apply a six year statute of limitations to negligent misrepresentation claims sounding in fraud. N.Y. C.P.L.R. 213(1), (8). It is unsettled whether the fraud-specific discovery rule, C.P.L.R. 213(8), applies to negligent misrepresentation claims. See Maverick Fund, L.D.C. v. Converse Tech., Inc., 801 F. Supp. 2d 41, 62-63 (E.D.N.Y. 2011); see also Santiago v. 1370 Broadway Assocs., L.P., 749 N.E.2d 168, 169 (N.Y. 2001) (whether fraud, misrepresentation, or negligence statute of limitation applies to negligent misrepresentation depends on facts of claim). To the extent the Trustees' claims sound in fraud, the claims survive the statute of limitations for the same reasons as the fraud claim. But those negligent misrepresentation claims unrelated to management fees are barred if the violation occurred more than six years ago.

Fourth, the Trustees bring a claim for conversion (Claim Seven). New York's statute of limitations for conversion claims is three years, N.Y. C.P.L.R. 214(3), and accrues at the time of conversion regardless of a plaintiff's knowledge of the conversion. Herman v. Depinies, 710 N.Y.S.2d 899, 899 (1st Dep't 2000). To the extent the conversion claim seeks recovery for violations more than three years before the Complaint was filed, that portion of the claim is time-barred.

Fifth, the Trustees bring a claim for unjust enrichment (Claim Eight). New York's statute of limitations for unjust enrichment claims is three years where a plaintiff seeks monetary relief and six years for equitable relief. N.Y. C.P.L.R. 214(3); Ingrami v. Rovner, 847 N.Y.S.2d 132, 134-35 (2d Dep't 2007). The Trustees seek both monetary and equitable relief. To the extent the unjust enrichment claim seeks recovery for violations more than three years before the Complaint was filed for monetary relief and six years for equitable relief, the claim is time-barred.

### (3) Waiver and Estoppel

MagnaCare asserts waiver and estoppel affirmative defenses.[12] In "'extraordinary circumstances[,]' principles of estoppel can apply in ERISA cases." Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993). "Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001); see also Lee v. Burkhart, 991 F.2d at 1009. Courts "will infer a waiver only where the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." Mooney v. City of New York, 219 F.3d 123, 131 (2d Cir. 2000) (internal quotation marks and citation omitted).

MagnaCare points to no misrepresentation by the Funds. Instead, it claims to have relied on the Trustees' failure to object to a variety of alleged breaches. Generally, "a party's silence does not give rise to a claim of equitable estoppel when the party has no duty to

---

[12] Although MagnaCare asserts waiver and estoppel defenses to all claims, they cite only cases concerning estoppel of an ERISA claim. Therefore any waiver or estoppel defense as to the non-ERISA claims is not before this Court on this motion.

speak." Gaia House Mezz LLC v. State St. Bank & Trust Co., 720 F.3d 84, 90 (2d Cir. 2013).

Permitting a trustee to waive beneficiaries' right to compliance with ERISA fiduciary obligations would erode Congress's purpose in creating those obligations. See Dardaganis v. Grace Capital Inc., 889 F.2d 1237, 1241 (2d Cir. 1989) (rejecting estoppel defense where it would result in oral modification of plan documents, despite ERISA's statutory prohibition on oral modifications). The federal common law estoppel defense cannot extend so far. Cf. Dardaganis, 889 F.2d at 1241; Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir. 1986) ("Federal common law must be consistent, not only with the language, but also with the policies of the federal statutory scheme in question.").

Even if estoppel by omission applies here, MagnaCare fails to explain how reliance on the Trustees' omission was reasonable when, according to the Complaint, the Trustees knew nothing of and had no way of knowing of the adjustment of laboratory diagnostic services management fees, the durable medical equipment charges, or MagnaCare's claim adjudication practices until 2011. See Kosakow, 274 F.3d at 725. The Complaint alleges MagnaCare hid these facts from the Trustees.

Finally, courts permit waiver of ERISA requirements only in extraordinary circumstances. See, e.g., McManus & Pellouchoud, Inc. Emps.' Profit Sharing Trust v. L.F. Rothschild, Unterberg, Towbin, No. 87 C 465, 1989 U.S. Dist. LEXIS 10098, at *8-11 (N.D. Ill. Aug. 22, 1989) (trustee estopped from bringing ERSIA claim against broker where "broker act[ed] with the approval and at the direction of a plan Trustee, . . . a sophisticated investor who owns a majority interest in the Trust.); Nachwalter v. Christie, 611 F. Supp. 655, 663-64 (S.D. Fla. 1985) (trustee estopped from bringing ERISA claim against fellow trustees where he "participated in or approved the challenged investments decisions"), aff'd 805 F.2d 956, 960

(11th Cir. 1986); <u>Rosenthal v. Nat'l Life Ins. Co.</u>, 486 F. Supp. 1018, 1025 (S.D.N.Y. 1980) (beneficiary estopped from bringing ERISA claim against employer where he was "a lawyer with high managerial responsibility with the [employer]"). MagnaCare points to no such extraordinary circumstance on the face of the Complaint. Therefore, the ERISA claim survives the waiver and estoppel defenses.

III.    <u>The Trustees' Motion to Dismiss and Motion for Summary Judgment</u>

The Trustees challenge MagnaCare's statutory standing to bring the counterclaim. In advancing that argument, the Trustees rely on factual matters that are <u>dehors</u> the pleadings. A district court may convert a motion to dismiss into a motion for summary judgment only if the parties have notice and "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "The essential inquiry is whether the [parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." <u>Groden v. Random House, Inc.</u>, 61 F.3d 1045, 1052-53 (2d Cir. 1995) (quoting <u>In re G. & A. Books, Inc.</u>, 770 F.2d 288, 295 (2d Cir. 1985) ("Even where only the party moving to dismiss has submitted extrinsic material such as depositions or affidavits, the opposing party may be deemed to have had adequate notice that the motion to dismiss would be converted.")); <u>see also</u> <u>Sahu v. Union Carbide Corp.</u>, 548 F.3d 59, 66-70 (2d Cir. 2008) (notice is context-specific).

The Trustees moved to dismiss MagnaCare's counterclaim under Rules 12 and 56, (Motion to Dismiss Counterclaim at 1-2, ECF No. 24), and submitted affidavits and a Rule 56.1 Statement containing matters outside of the pleadings, (Pergue Aff. at 1-2; R. 56.1 Statement at 2, ECF No. 28). The parties' motion papers and oral argument on the counterclaim

centered on matters outside of the pleadings. (See, e.g., Mar. 27 Tr. 3:3-4:7; Mem. Supp. Mot.

Dismiss Counterclaim 14, ECF No. 27; Mem. Opp'n to Pls.' Mot. Dismiss Counterclaim 14,

ECF No. 35.) Finally, this Court notified the parties of its intent to treat the Trustees' motion to

dismiss the counterclaim as a motion for summary judgment. (Order, June 2, 2014, ECF No.

41.) Therefore, MagnaCare had a full opportunity to present pertinent facts, and this Court

construes the Trustees' motion as a motion for summary judgment. See Sahu v. Union Carbide

Corp., 548 F.3d 59, 69-70 (2d Cir. 2008).

  Summary judgment should be rendered if the record shows that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The burden of demonstrating the absence of any genuine dispute as to a material fact rests with

the moving party.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once the

moving party has made an initial showing that there is no genuine dispute of material fact, the

non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat

summary judgment, Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d

Cir. 2003) (quoting Anderson, 477 U.S. at 252), but must set forth "specific facts showing that

there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986).  "A dispute about a 'genuine issue' exists for summary judgment purposes

where the evidence is such that a reasonable jury could decide in the non-movant's favor."

Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d

140, 145 (2d Cir. 2007)).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Scott v. Harris, 550

U.S. 372, 380 (2007) (quoting Matsushita, 475 U.S. at 586-87).  This Court resolves all factual

ambiguities and draws all inferences in favor of the non-moving party. See Anderson, 477 U.S. at 255; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

Under ERISA § 502, a civil action may be brought by a participant, a beneficiary, a fiduciary, or the Secretary of Labor. 29 U.S.C. § 1132(e). This list is exclusive. Chemung Canal Trust Co. v. Sovran Bank/Md., 939 F.2d 12, 14 (2d Cir. 1991). Former fiduciaries have no continuing right to sue on behalf of a plan to which they are complete strangers. Chemung Canal, 939 F.2d at 14.

The Funds argue MagnaCare, as a former fiduciary, has no statutory standing under ERISA. Whatever MagnaCare's status from 2001 to 2013, it is no longer a fiduciary of the plans. UTF terminated its relationship with MagnaCare on December 31, 2013, and Local 522 terminated its relationship with MagnaCare on January 31, 2014. (Pergue Aff. at 2.) Because any authority or control MagnaCare exercised over its compensation evaporated with the Funds' termination of the contracts, MagnaCare no longer qualifies as a fiduciary. See 29 U.S.C. § 1002(21)(A). Therefore, MagnaCare lacks statutory standing to bring this ERISA counterclaim.

MagnaCare argues its circumstances—being held accountable for actions that took place years ago by those responsible for catching the alleged violations—merit an exception to § 502. The exceptions to § 1132(e)(1) are narrow. Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 329 (2d Cir. 2011) (beneficiaries may assign their claim to a health care providers); L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opp'y Comm'n of Nassau Cnty., Inc., 710 F.3d 57, 66 (2d Cir. 2013) (representatives of former participants have standing where funds include assets they contributed during their participation). Even removal of a fiduciary for the

very purpose of precluding suit warrants no exception.  Blackmar v. Lichtenstein, 603 F.2d 1306, 1310 (8th Cir. 1979.), cited with approval in Chemung, 939 F.2d at 14-15.

Even if the Funds terminated their contracts with MagnaCare specifically to preclude MagnaCare's counterclaim, MagnaCare would not have statutory standing.  See Chemung, 939 F.2d at 14-15; Blackmar, 603 F.2d at 1310.  MagnaCare has no interest in the outcome of an ERISA claim on behalf of the plans.  Therefore, the Trustees' motion for summary judgment on the counterclaim is granted.  The Trustees' remaining arguments are dismissed as moot.

### CONCLUSION

For the foregoing reasons, MagnaCare Administrative Services, LLC's and MagnaCare, LLC's motion to dismiss Plaintiffs' Complaint is granted in part and denied in part. The motion to dismiss the deceptive practices claim and the injunctive relief claim are granted; the motion to dismiss the ERISA claim is denied; and the motion to dismiss the fraud, breach of contract, negligent misrepresentation, conversion, and unjust enrichment claims are granted in part and denied in part.

United Teamster Fund's and Local 522 Welfare Fund's motion for summary judgment dismissing Defendants' counterclaim is granted and the Trustees' motion to dismiss is denied as moot.

The Clerk of Court is directed to terminate the motions pending at ECF Nos. 24 and 29.

Dated: August 14, 2014
        New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Richard M. Asche, Esq.
Russell M. Gioiella, Esq.
Litman, Asche Lupkin, Gioiella & Bassin, LLP
45 Broadway, 30th Floor
New York, NY 10006

Howard L. Pierce, Esq.
Mueller Pierce LLC
433 South Main Street, Suite 228
West Hartford, CT 06110
*Counsel for Plaintiffs*

John William Cook, Esq.
Daly D.E. Temchine, Esq.
Epstein, Becker & Green, P.C. (New York)
250 Park Avenue
New York, NY 10177
*Counsel for Defendants*